Emzy T. Barker and Ruth Barker v. Commissioner.
Barker v. Commissioner
Docket No. 93713.
United States Tax Court
T.C. Memo 1963-314; 1963 Tax Ct. Memo LEXIS 33; 22 T.C.M. (CCH) 1649; T.C.M. (RIA) 63314; November 26, 1963
Frank L. Scofield, Mutual Savings Bldg., Austin, Tex., for the petitioners. L. Lyle Walker, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined deficiencies in the income tax of the petitioners for the years 1957 and 1958 in the respective amounts of $38,381.15 and $155. Petitioners allege in their petition that respondent erred in failing to adjust their taxable income for the taxable year 1957 to include therein the income and expenses earned and incurred in the operation of a trucking business which operation for the period August 1, 1957, through December 31, 1957, resulted in a loss of $19,086.43; [1] failing to attribute to the taxable years 1957 and 1958 the applicable portion of the loss in the amount of $94,125.41 resulting from the operation *34 of such business for the period January 1, 1958, through June 30, 1958; and failing to allow a business bad debt deduction in the amount of $67,375.59. The issues for decision as a result of these assignments of error are: (1) Whether alleged losses from the operation of a trucking business are to be attributed to petitioner Emzy T. Barker as an individual or to Emzy Barker, Truck Line, Inc. (2) Whether petitioners sustained a business bad debt loss in the amount of $67,375.59 on the worthlessness of an alleged indebtedness of Emzy Barker Truck Line, Inc. (3) Whether petitioners are entitled to additional depreciation in the amount of $5,597.70 on certain trucking equipment. Findings of Fact Some of the facts have been stipulated. The stipulation of facts and attached exhibits are herein incorporated by this reference. Petitioners, Emzy T. Barker and Ruth Barker, are husband and wife with residence at Route 1, Taylor, Texas. Petitioners, who report their income on a cash basis, filed their original joint *35 income tax returns for the taxable years 1957 and 1958 and an amended joint income tax return for the year 1958 with the district director of internal revenue, Austin, Texas. Prior to 1957, petitioner Emzy T. Barker (hereinafter referred to as petitioner) operated grain, construction, and trucking businesses as a sole proprietorship. Petitioner had been in the trucking business since 1945 when he obtained a specialized trucking permit from the Railroad Commission of Texas. This permit, designated as Certificate No. 6908 and amended March 16, 1955, remained in full force and effect until its cancellation on June 30, 1958. The individual trucking business was operated under the name of Emzy Barker Truckline. The office of the business was located in Elgin, Texas. All three businesses were operated out of one bank account, at the Elgin National Bank, Elgin, Texas. After considering the advantages and disadvantages of incorporating and the possibilities of thereby securing individual protection for himself and loans for his grain business, petitioner decided in June or July of 1957 to incorporate his trucking grain, and construction businesses into three separate corporations. On *36 June 10, 1957, a meeting of incorporators of the proposed trucking corporation, to be known as Emzy Barker Truck Line, Inc. (hereinafter referred to as the corporation), was held in Elgin, Texas. Those present and acting as incorporators and directors of the initial board of directors were petitioners and Alice Johnson, secretary of the proposed corporation. The Articles of Incorporation adopted at such meeting and filed with the secretary of state of the State of Texas, Austin, Texas, on June 27, 1957, provided that the purposes of the corporation were "to transport goods, wares and merchandise, or any valuable thing, and to purchase and sell such goods, wares and merchandise, and agricultural and farm products." At the organizational meeting of the incorporators, held July 1, 1957, an offer signed by Emzy Barker and dated June 15, 1957, was presented to the corporation, such offer being, in part, as follows: I hereby offer to sell, convey and transfer to you in exchange for 98 shares of the par value of ONE HUNDRED AND NO/100 ($100.00) DOLLARS per share of the shares of the corporation that you are organizing, said shares to be issued to me fully paid and nonassessable, the business *37 carried on and conducted by me at 102 East 2nd Street, in the City of Elgin, Texas, known as Emzy Barker Truck Line, together with all trucks, vans and trailers used in said business. You are to take over said business as a going concern and assume and pay all outstanding obligations of every nature and description. Said property and indebtedness being as follows: 22 Vanes
$265,238.08
Depreciation to
6-30-57
58,419.00
Value after de-
preciation
206,819.08
Less Indebtedness: Notes payable
127,799.86
Accounts payable
1,843.63
Total of Indebtedness
129,643.49
Net value of equip-
ment
77,175.59
You are to issue 98 shares at $100.00 per share to me and execute a note for $67,375.59 representing the balance. The incorporators authorized the board of directors to accept petitioner's offer. An organizational meeting of directors was also held on July 1, 1957. Officers of the corporation were elected as follows: Emzy T. Barker, president, Ruth Barker vice president; and Alice Johnson, secretary-treasurer. Petitioner's offer to sell his trucking business and all trucks, vans, and trailers used in the business was accepted. By-laws were adopted *38 and the secretary-treasurer was authorized and instructed to open a bank account in behalf of the corporation at the Elgin National Bank, Elgin, Texas. All funds of the corporation were to be deposited to such account and all checks drawn on such account in payment of debts were to be signed by petitioner as president or in such manner as provided from time to time by the board of directors. On July 2, 1957, petitioner, in his individual capacity, executed an instrument entitled "Bill of Sale and Chattel Mortgage" which listed 22 items of trucking equipment as being sold to the corporation. As consideration of such sale the instrument recited that petitioner received $9,800 cash and a promissory note in the amount of $67,375.59 payable to the order of petitioner at Taylor, Texas, on or before January 1, 1958, and bearing interest at the rate of 5 percent per annum. The note was executed for the corporation by petitioner as president. No payments of principal or interest were made on the note and the corporation claimed no deduction for accrued interest. In addition to the property sold to the corporation, petitioner assigned to the corporation certain leases which he had on tracks *39 and equipment with Mack Trucking Company and Ferguson Truck & Trailer Leasing, Inc. Trucks and equipment were also purchased and leased by the corporation from other sources. A bank account was opened in August 1957 with the Elgin National Bank in the name of the corporation. A signature card was filed authorizing petitioner as president to sign checks on the corporation's account. During the period of August 1957 through April 1958 checks bearing the caption "Emzy Barker Truckline," "Emzy Barker Truckline, Inc.," and "Emzy Barker Truck Line, Inc.," respectively, were cleared through the corporation's bank account at the Elgin National Bank. The corporation also had a bank account with the American National Bank, Austin, Texas. The checks written on this account were captioned "Emzy Barker Truck Line, Inc." On October 14, 1957, an application for the sale and transfer of specialized motor carrier Certificate No. 6908 from petitioner to the corporation was received by the Railroad Commission of Texas. The application was signed by petitioner individually and by him in his capacity as president of the corporation. Attached to the application were a statement that the transferor (petitioner) *40 owed no creditors; a list of equipment operated or to be operated by the transferee (corporation) in connection with Certificate No. 6908; a statement showing that petitioner owned 98 percent and Alice Johnson and petitioner Ruth Barker owned 1 percent each of the corporation's stock; a balance sheet of the corporation as of September 30, 1957; the contract to transfer Certificate No. 6908; and a Specialized Motor Carrier Operating Report to Railroad Commission of Texas showing no operating revenue or expenses of petitioner's trucking business and marked "Interstate Operations Only." The Railroad Commission of Texas issued an order dated December 13, 1957, approving petitioner's application to transfer and sell specialized motor carrier Certificate No. 6908 to the corporation. This order was cancelled by the Railroad Commision on April 7, 1958, for failure to comply with insurance requirements. A final order was issued June 30, 1958, cancelling petitioner's specialized motor carrier Certificate No. 6908. Before and after petitioner incorporated his trucking business operations were carried on in 23 states. Most of the permits, returns, and reports required by these states remained *41 in petitioner's name; but in keeping with the transfer of the trucking business to the corporation, steps were taken to put some of the instruments in the name of the corporation and at least one hauling permit, State of Missouri Interstate Permit No. T-12, 582, was transferred from petitioner to the corporation. During the period subsequent to the order approving the transfer of Certificate No. 6908 to the corporation and prior to the cancellation of such order, petitioner filed statements in his name with the Railroad Commission of Texas indicating that he had no creditors and no operating revenue or expenses relating to a truck line. In its operations the corporation used stationery bearing the corporation's name and payroll account checks captioned "Emzy Barker Truckline, Inc." Rubber stamps bearing the abbreviation, "Inc." were obtained and used on checks and documents of the business to show that it was doing business in the corporate form. Certain insurance on trucks used by the corporation was carried in the name of "Emzy Barker Truck Line, Inc., and/or Emzy Barker, as their interests may appear." On October 2, 1958, an abstract of judgment in favor of Ferguson Truck *42 & Trailer Leasing, Inc., was filed in the District Court of Bexar County, Texas, against petitioner and the corporation, jointly and severally, for the principal sum of $61,880.22, plus attorney's fee of $10,000, with interest on such amounts from September 15, 1958, at the rate of 6 percent per annum. A notice of Franchise Tax Lien of the State of Texas was issued against the corporation on July 3, 1959, for each of the years 1957, 1958 and 1959. A certificate of dissolution of the corporation was filed in the office of the secretary of state in Austin, Texas, on October 2, 1959. In petitioners' joint income tax return for 1957 there was attached a depreciation schedule containing a list of equipment used in each of petitioner's businesses. As per the schedule, depreciation was claimed on petitioner's farm equipment for the entire year 1957 and on his trucking, grain, and construction equipment for the six-months period ending July 31, 1957, i.e., the approximate date of incorporation of such businesses. In the original joint income tax return for 1958, petitioner reported wages in the amount of $6,777.92 received from Barker Grain & Elevator, Inc., and a loss from farming activities *43 in the amount of $2,399.98. Losses on the common stocks of Barker Grain & Elevator, Inc., and Emzy Barker Truck Line, Inc., in the respective amounts of $100,000 and $10,000 were claimed, such losses being represented to have resulted from creditor actions against both corporations. Petitioners filed an amended joint income tax return for 1958 to claim a business bad debt loss on the $67,375.59 note received from the corporation on the transfer of trucking equipment to the corporation. No revenue or expenses relating to a trucking business were reported on either the original or amended returns for 1958. A corporate income tax return, in which was reported a net operating loss in the amount of $113,211.84, was filed by the corporation for the fiscal year ended July 31, 1958, with the district director of internal revenue, Austin, Texas. The return, signed by petitioner in his capacity as president, was prepared from books and records of the corporation. Ultimate Findings 1. Petitioner's individual trucking business was transferred to the corporation on July 2, 1957, and such business was thereafter carried on by the corporation. 2. The amount of $67,375.59 evidenced by a note *44 represented an investment in the corporation and was placed at the risk of the business. Opinion Issue 1 Operating Loss The first question to be resolved relates to the alleged $113,211.84 loss from the operation of a trucking business. Petitioner contends that, notwithstanding the sale of his individual trucking business to the corporation, he continued to operate the business as a sole proprietorship, and that the losses claimed on the corporation's tax return for the period August 1, 1957, to July 31, 1958, are deductible by him as an individual. He further asserts that the corporation was merely a conduit through which flowed the income and expenses earned and incurred by petitioner as an individual, that it was a sham, that it served no business purpose and engaged in no business, and that it should be ignored. Our first concern is with the existence of the corporation for Federal tax purposes. As stated in : [the] doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid, or to *45 comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. In the instant case, whether petitioner's reason for incorporating his trucking business was to separate his business enterprises so that loans could be obtained in his other businesses or to afford himself personal protection as he testified, a corporation was created under Texas law. That the purpose of such corporation was to conduct a trucking business is unquestionable. The Articles of Incorporation provided that the corporation was organized to transport goods, wares, and merchandise and to purchase and sell such goods, wares, and merchandise. At the time of incorporation, petitioner offered to sell and the corporation agreed to purchase "the business carried on and conducted * * * as Emzy Barker Truck Line, together with all trucks, vans and trailers." Petitioner transferred certain leases on trucking equipment to the corporation and filed an application for permission to transfer the hauling permit *46 to the corporation. We cannot ignore these realities to find, as petitioner would have us do, that he intended to conduct the trucking business as a sole proprietorship. Furthermore, we are convinced that a trucking business was in fact operated by the corporation following its creation. Petitioner's argument to the contrary is that contracts, invoices, bills, and checks for hauling continued to be made out in petitioner's name or in the name of Emzy Barker Truckline. In essence, petitioner is asserting that in practical operations the trucking business was substantially identified with him as owner. It is well settled, however, that a corporate entity will not be disregarded for tax purposes merely because the sole or controlling stockholder retains detailed control and direction of the affairs of the corporation. ; (C.A. 10, 1957), affirming ; , affd. (C.A. 3, 1952). While it is true that some of the operations of the truck line were carried *47 on as if no corporation existed, which is not surprising in view of the loose manner in which the business was conducted, there are many corporate activities and characteristics which cannot be ignored. The corporation maintained two bank accounts in its name through which passed all checks issued or received by the trucking business. Some of the checks were captioned "Emzy Barker Truck Line, Inc." Salaries of employees were paid with checks of the corporation. In addition, the corporation issued stock, had officers and directors, held stockholders' and directors' meetings, kept books and records, paid rent, negotiated contracts, negotiated for permits to operate its trucks, obtained at least one hauling permit, purchased and leased operating assets, had taxes levied against it, used stationery bearing its own caption, filed a Federal corporate income tax return, and existed as a corporation until officially dissolved on October 2, 1959. The clear inference from these facts and the record as a whole is that the trucking business was transferred to and carried on by the corporation. And petitioner's arguments that such business activities would be illegal for failure of the corporation *48 to obtain a permit and that he remained personally liable for the debts of the business because of the failure to publicize its incorporation are questions that are not before us and that are immaterial to a determination that a corporation exists for tax purposes. Having chosen to incorporate the trucking business, petitioner must accept its tax disadvantages. Accordingly, any losses resulting from the operation of the trucking business are properly attributed to the corporation rather than to the petitioner. Having so found, it becomes unnecessary to consider respondent's alternative argument that the alleged losses were not substantiated since, for purposes of this case, the result would be the same. Issue 2 Business Bad Debt Petitioner advances alternative contentions for the second issue. His first contention is that if the corporation is to be disregarded for tax purposes, he be allowed a business loss for his total equity in the trucks and vans in the amount of $77,175.59. It having been previously found that the corporation is not to be disregarded, this argument necessarily fails. Moreover, such claim was not raised in the pleadings of this case and, if allowed, would *49 give rise to a duplication of deductions since petitioners have claimed and been allowed a $10,000 capital loss on their stock in the corporation. As an alternative contention, petitioner submits that he is entitled under section 166 of the 1954 Code [2] to deduct $67,375.59 as a business bad debt acquired or created in connection with petitioner's business of operating a truck line. To prevail herein, petitioner has the burden of showing that the amount in question represented a loan rather than a capital contribution, and, if a loan, that its worthlessness gives rise to a business bad debt rather than a nonbusiness bad debt. We think petitioner has failed to meet his burden. *50 At the time of its incorporation the corporation agreed to receive equipment having a depreciated value of $206,819.08 and to assume liabilities of $129,643.49. To cover the net difference of $77,175.59, the corporation issued 98 percent of its authorized $100 par value stock to petitioner and executed to him a note for $67,375.59. Petitioner urges that the form and manner by which the trucking equipment was transferred reflects the intention of the parties to create a true debt. The formal characterization of the amount in question as a loan, however, should not be permitted to obscure the real substance of the transaction. This is especially true when the organizers of a new corporation designate as loans the major portion of the corporation's financial structure, thereby raising a strong inference that the entire amount is a contribution to capital. , affd. per curiam (C.A. 2, 1951); and the cases cited therein. Whether or not the real intent was to create a debt is to be determined in the light of all the facts. And one of the essential characteristics of debt *51 that must be present is an unqualified obligation to repay in any event a sum certain. In the instant case it is apparent that the amount in question was intended to be paid only if the corporation was successful. Petitioner, as dominate shareholder, could not afford to have had the $67,375.59 note paid irrespective of the corporation's income. Indeed, petitioner candidly testified that he expected to be paid out of the earnings of the corporation. Additionally, there were no payments of any kind and there is no evidence that a demand for payment was made when the note became due or that interest was paid or accrued. Considering these factors and that the corporation, already heavily in debt, would have otherwise been thinly capitalized, it is our view that the amount of $67,375.59 represented an investment in the corporation and was placed at the risk of the business. Such an investment constitutes a contribution to capital, and the loss suffered in relation thereto is deductible only as a capital loss. Issue 3 Depreciation The remaining issue is whether petitioners are entitled to additional depreciation in the amount of $5,597.70 on certain trucking equipment alleged to *52 have been retained by petitioner in his own name and used in his individual trucking business. Petitioners' claim for additional depreciation is untenable even assuming, which we do not because of certain inconsistencies and indequacies in the record, that the equipment in question was not transferred to or used in petitioner's incorporated businesses. Petitioner's right to a deduction is dependent upon his remaining in the trucking business as an individual. Having previously found that losses from the operation of the trucking business are to be attributed to the corporation, we are by the same token convinced that petitioner did not carry on a trucking business separate and apart from that of the corporation. Furthermore, the position that petitioners now take is inconsistent with the position taken in their joint income tax return for 1957 in which they claimed depreciation on trucking equipment only for the period prior to incorporation and in their original and amended joint returns for 1958 in which they reported no income and claimed no expenses relating to a trucking business. We conclude, therefore, that petitioners are not entitled to the additional depreciation they *53 claim. Decision will be entered for the respondent. Footnotes
1. In petitioners' exhibits and briefs, the amount of the alleged loss for the period August 1, 1957, through December 31, 1957, is represented to be $33,008.77.↩
2. SEC. 166. BAD DEBTS. (a) General Rule. - (1) Wholly Worthless Debts. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. * * *
(d) Nonbusiness Debts. - (1) General Rule. - In the case of a taxpayer other than a corporation - (A) subsection (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. (2) Nonbusiness Debt Defined. - For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than - (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.↩